Filed 5/5/25  In re J.S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | B338427 |
| | (Los Angeles County Super. Ct. No. 19CCJP00583) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| U.S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Syna N. Dennis, Juvenile Court Referee. Dismissed as moot.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Mother U.S. appeals from the juvenile court's modification order removing her son J.S. (born 2009) from her physical custody and placing him with his foster parents. U.S.'s sole contention on appeal is that the court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Cal-ICWA) (see Welf. & Inst. Code, §§ 224.2, 224.3, subd. (a)1)).[1]

While this appeal was pending, the juvenile court ordered the Department to conduct an additional ICWA inquiry. On this basis, the Department moved to dismiss the appeal as moot. We grant the motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Dependency Proceedings*

In April 2019, the juvenile court sustained a petition by the Department alleging U.S. physically abused J.S. and his siblings.

_____

[1]    Undesignated statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

The court declared J.S. a dependent child of the juvenile court and removed him from U.S.'s custody, with family reunification services for U.S.

U.S. identified Cody H. as J.S.'s biological father and the court found him to be an alleged father. Cody stated he had not seen J.S. since infancy and declined to participate in the proceedings. The court ordered no family reunification services for Cody.

U.S. failed to reunify with J.S., and in 2022, the juvenile court terminated her reunification services and set a permanency planning hearing under section 366.26. The court identified adoption by the foster parents as the appropriate permanent plan for J.S. In July 2023, before the section 366.26 hearing was held, the Department reported the foster parents no longer wanted to adopt J.S. and asked the court to return J.S. to U.S.'s custody. In January 2024, the court ordered J.S. be placed in U.S.'s care with family maintenance services.

In February 2024, J.S.'s attorney filed a request for modification under section 388, seeking to have J.S. returned to his foster parents. The Department and U.S. opposed the request and asked that J.S. remain with U.S. and his siblings with family maintenance services.

In April 2024, the juvenile court held a hearing, granted the modification request, and removed J.S. from U.S.'s physical custody with reunification services. U.S. timely appealed.

B.     *The Department and Juvenile Court's ICWA-related Actions*
At the time the Department filed the petition on behalf of J.S. in 2019, it attached the required ICWA-010(A) form indicating inquiry had been made and J.S. had no known Indian

3

ancestry. U.S. filed an ICWA-020 form stating she had no known Indian ancestry.

At the initial hearing, U.S. advised the juvenile court she had no reason to know any of the children's fathers had Indian ancestry. The court found it did not have reason to know J.S. was an Indian child at that time. It ordered the Department to continue interviewing all appropriate relatives regarding Indian ancestry. There is no record that any other ICWA inquiry was ever made. At a hearing in 2020, the juvenile court stated that its "prior no ICWA finding remains in full force and effect."

The Department does not dispute that it did not conduct an adequate ICWA inquiry. The Department interviewed Cody twice, in 2019 and 2022, but there is no indication of any ICWA inquiry during these interviews. Although Cody also identified a paternal grandmother who lived in another state, there is no indication the Department made any inquiry of her, or of any other paternal or maternal extended family members as to whether J.S. had any Indian ancestry. The record also reflects a maternal aunt would visit J.S., the Department had contact with the maternal grandmother in 2009, and that the children resided with the grandmother from 2010 to 2012; but it does not appear either was questioned about J.S.'s ancestry.

C.     *The Postjudgment ICWA Order*

While this appeal was pending, on January 2, 2025, the juvenile court ordered the Department to conduct further ICWA inquiry. Consistent with *In re Kenneth D.* (2024) 16 Cal.5th 1087, we take judicial notice of the existence and content of the juvenile court's postjudgment order. (See *id.* at p. 1106 ["a court ""may take judicial notice of the existence of each document in a

4

court file"'''" as well as "''''judicial notice of the truth of facts asserted in documents such as orders"''''"]; Evid. Code, §§ 452, 459; Cal. Rules of Court, rule 8.155(a)(1)(A).)

Specifically, the court ordered:

"1.  Mother and father shall provide DCFS with contact information of extended family members.

"2.  Mother and father shall provide DCFS with any genetic tests or other documents relating to the child's paternity.

"3.  DCFS shall interview/attempt to interview all known and available maternal extended family members about whether the child is, or may be, an Indian child as required by WIC section 224.2, subd. (b), including the maternal grandmother and maternal aunt.

"4.  In the abundance of caution, even though the father is alleged only, DCFS shall interview/attempt to interview all known and available paternal extended family members about whether the child is, or may be, an Indian child as required by WIC section 224.2, subd. (b), including the father and paternal grandmother.

"5.  DCFS is not required to re-interview persons already interviewed about Native American ancestry, unless further ordered by the court.

"6.  DCFS shall document all its efforts and submit a written report on the results of the interviews/attempts to interview all extended family members prior to February 27, 2025, the previously scheduled 366.26 hearing.

"7.  After reviewing the report and determining whether DCFS has interviewed all available extended family members, the juvenile court shall make a finding regarding the ICWA's applicability."

# DISCUSSION

A.      *ICWA and the Duties of Inquiry and Notice*

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*In re Dezi C.* (2024) 16 Cal.5th 1112,1129; see 25 U.S.C. §§ 1902, 1921; *In re T.R.* (2024) 107 Cal.App.5th 206, 218.) "[W]hen ICWA applies, 'the Indian child's tribe shall have a right to intervene at any point' in a proceeding involving the removal of an Indian child from their family." (*In re Dezi C.,* at p. 1129; see also 25 U.S.C. § 1911(c).) "To ensure tribes have the opportunity to exercise their rights in dependency proceedings, an investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided, where appropriate, to the relevant tribes." (*In re T.R.,* at p. 218; see § 224.2, subd. (a).)

An inadequate ICWA inquiry in a dependency case does not involve "a conventional scenario in which the harm from error directly and solely affects the appealing party." (*In re Dezi C., supra,* 16 Cal.5th at p. 1138.) Rather, "an appealing parent 'is in effect acting as a surrogate for the tribe in raising compliance issues.'" (*Ibid.*) "ICWA and Cal-ICWA ""recognize[] that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents"" and other relatives." (*Ibid.*) "That interest is compromised and cannot be protected if the social service agency and the juvenile court fail to perform their inquiry duties." (*Ibid.*)

6

The duty to inquire "'begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.'" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; see § 224.2, subds. (a)-(c).) The juvenile court is required to "ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child." (§ 224.2, subd. (c).) The Department's duty of "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2); *In re T.R., supra,* 107 Cal.App.5th at pp. 218-219.)

ICWA and Cal-ICWA define "'extended family member,'" if not separately defined by the law or custom of the Indian child's tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c).)

The duty of further inquiry is triggered if the juvenile court or the Department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e); see *In re T.R.*, *supra,* 107 Cal.App.5th at p. 219.) That further inquiry requires interviewing, "as soon as practicable," extended family members, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected

7

to have information regarding the child's membership, citizenship status, or eligibility."  (§ 224.2, subd. (e), (e)(2)(C); see *In re T.R.*, at p. 219.)

If the further inquiry "results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; accord, *In re T.R.*, *supra,* 107 Cal.App.5th at p. 219; see 25 U.S.C. § 1912(a); § 224.3, subd. (a).)  "'The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families.'"  (*In re Rylei S., supra,* 81 Cal.App.5th at p. 317; accord, *In re Dezi C., supra,* 16 Cal.5th at pp. 1131-1132.)

"[E]rror resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3.  When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial. [Citations.]  '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.'"  (*In re Dezi C., supra,* 16 Cal.5th at p. 1136; accord, *In re T.R., supra,* 107 Cal.App.5th at p. 220; see *In re Kenneth D., supra,* 16 Cal.5th at p. 1094 ["a judgment must be conditionally reversed when error results in an inadequate ICWA inquiry"].)

B.    *The Appeal Is Moot*

As stated, while this appeal was pending, the juvenile court ordered the Department to conduct a further ICWA inquiry.  The

8

Department moved to dismiss the appeal as moot or "not yet ripe for review." We review questions of mootness and ripeness de novo. (See *In re D.P.* (2023) 14 Cal.5th 266, 276 [mootness]; *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582 [ripeness].)

An appeal "becomes moot when events '"render[ ] it impossible for [a] court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief."'" (*In re D.P., supra,* 14 Cal.5th at p. 276.) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Ibid.*) "In this context, relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.'" (*Id.* at p. 277.)

Here, U.S. "satisfied the first requirement: she complains of the Department's and the court's failure to fulfill their duty of inquiry under ICWA." (*In re T.R., supra,* 107 Cal.App.5th at p. 214.) As the Department concedes, its ICWA inquiry was insufficient. The Department had a duty pursuant to section 224.2, subdivision (b), to ask the parents and extended family members whether J.S. had possible Indian ancestry. It failed to ask Cody about J.S.'s possible Indian ancestry at any interview. Maternal and paternal family members were also identified. The Department was required to, but did not, report that an ICWA inquiry was made of these relatives. Additionally, the juvenile court failed to ensure the Department had complied with its statutory obligations before finding ICWA did not apply. In short, the Department and the court did not fully comply with ICWA. (See *In re Dezi C., supra,* 16 Cal.5th at p. 1141.)

9

Ordinarily we would conclude that U.S. met the second requirement "because we can grant her relief by remanding to the juvenile court for ICWA compliance." (*In re T.R., supra,* 107 Cal.App.5th at p. 217 [conditionally affirming jurisdiction findings and disposition order].) The appropriate relief would be a conditional remand with directions for full compliance with the inquiry and notice provisions of ICWA and Cal-ICWA. (See *ibid.*; *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1125; *In re Kenneth D., supra,* 16 Cal.5th at p. 1094.) However, in this instance, U.S. already has the relief she seeks on appeal: The juvenile court has already ordered the Department to interview father and all known and available maternal and paternal extended family members, including the maternal grandmother, maternal aunt, and paternal grandmother, and to report the results. We cannot provide any effective relief by ordering the juvenile court to take the action it has already taken. At oral argument, U.S.'s attorney conceded there was no practical difference between an order from this Court directing the Department to comply with ICWA and the juvenile court's order. Accordingly, U.S.'s appeal is moot.

"Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*In re D.P., supra*, 14 Cal.5th at p. 282 ["As a rule, courts will generally exercise their discretion to review a moot case when 'the case presents an issue of broad public interest that is likely to recur,' 'when there may be a recurrence of the controversy between the parties,' or 'when a material question remains for the court's determination.'"; see *id.* at pp. 285-286 [identifying additional relevant factors for dependency cases that reviewing courts may consider].) U.S. does not argue or identify any reason why we should exercise our discretion to consider her moot appeal.

Our conclusion that this appeal is moot is not affected by *In re Kenneth D., supra,* 16 Cal.5th 1087 or *In re Dezi C., supra,* 16 Cal.5th 1112. These were not mootness cases and instead addressed "whether a child welfare agency's failure to make the statutorily required initial inquiry under California's heightened ICWA requirements constitutes reversible error." (*In re Dezi C.,* at p. 1125; see *In re Kenneth D.,* at p. 1094.) In *In re Kenneth D.,* the Court also held that "[w]here the juvenile court finds that ICWA does not apply based on an inadequate inquiry into a child's Native heritage, an appellate court, absent exceptional circumstances, may not consider evidence uncovered during a postjudgment inquiry to conclude the failure to conduct a proper inquiry was harmless." (*In re Kenneth D.,* at p. 1107 [reversing appellate court's finding of harmless error on the basis of a postjudgment department report submitted to the appellate court].) By contrast, our conclusion U.S.'s appeal is moot is not based on postjudgment evidence resulting from an additional ICWA inquiry, but rather from the existence of the juvenile court's postjudgment order giving her the same relief she seeks in this appeal.[2]

---

[2] We decline to rely on *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 697, which predates *In re Kenneth D.* and examined a postjudgment "report filed in the juvenile court" by the Department regarding the sufficiency of its ICWA inquiry. We do not reach the Department's argument the appeal is not ripe because we dismiss the appeal as moot.

## DISPOSITION

The motion to dismiss is granted and the appeal dismissed as moot.


MARTINEZ, P. J.

We concur:



SEGAL, J.



FEUER, J.